[S. F. No. 2799. Department Two.—April 4, 1902.]

HENRY E. MILLER, Respondent, v. MORRIS E. DAILEY et al., Appellants.

STATE NORMAL SCHOOL—DISCONTINUANCE OF PUPIL—MANDAMUS—JURISDICTION OF JOINT BOARD.—The joint board of normal school trustees has no jurisdiction to arbitrate the question of the right of an individual student to be admitted to the school, nor to hear and determine the grievance of a student who has been refused permission to continue in the school, and has been discontinued as a pupil therefrom by the faculty, and the student need not appeal to the joint board from the action of the faculty in refusing such permission, before applying to the court for a *mandamus* to compel his reinstatement as a pupil.

ID.—PARTIES TO MANDAMUS—MEMBERS OF FACULTY—NON-JOINDER OF
TRUSTEES.—Where the *mandamus* suit was brought only against the
president and teachers constituting the faculty of the normal school,
without joining the local board of trustees, and no objection was
raised to the proceedings by demurrer or otherwise for misjoinder
or non-joinder of parties, and the case was tried without objection
that the defendants were not proper parties, it cannot be urged upon
appeal that the action was commenced against the wrong parties,
and should have been against the board of trustees. The mem-
bers of the faculty having claimed and exercised the power to admit
plaintiff to the school, and also to drop or expel him, they were
properly made defendants.

ID.—SUFFICIENCY OF PETITION.—A petition for *mandamus* showing that
plaintiff possessed all the requisite qualifications for admission as a
student, and that he was regularly admitted as such, and conformed
to all the regulations of the school, and was pursuing the prescribed
studies when he was unlawfully expelled and struck from the roll
of the students and denied further instruction, states a cause of
action and shows a violation of the duty of the defendants in ex-
pelling him without cause. The petition need not set forth the
regulations governing the school.

ID.—MATTER OF DEFENSE.—If, after admission, the defendants had
cause for expelling the plaintiff as a pupil, they should show it as
a matter of defense.

ID.—POWERS OF LOCAL BOARD.—The local board can make no regulations
under the powers given to the joint board, or inconsistent there-
with; and it cannot set up its own arbitrary standard of admis-
sion, or fix the studies to be pursued, or the time or standard of
graduation.

ID.—ARBITRARY ACTION OF TEACHERS.—The teachers of the normal school
cannot deprive a qualified student from the privileges of the school
under a resolution of the local board, on the assumption that they
can by their own arbitrary will decide him to be "disqualified to
become a teacher," and dismiss him from the school, although he
had passed in all branches except practice teaching, and had never
failed in his examinations on that subject, and had not completed
the time given to it. It is not within their power to anticipate the
result of the final examination and exclude a student from the privi-
leges of the school at their election at any time, simply because in
their judgment he will never make a successful teacher.

ID.—REINSTATEMENT OF PUPIL—GRADUATION NOT INVOLVED.—It is not
a vain thing to grant to plaintiff the right to be reinstated as a
pupil under the law, merely because the court cannot compel the fac-
ulty to grant him a diploma. The right to be admitted to a
normal school is as valuable a right as that entitling a child to
be admitted to the primary or grammar school. The question of
graduation is not involved in such right.

ID.—TIME OF ATTENDANCE.—No definite time is prescribed by law dur-
ing which a student may attend a normal school.

APPEAL from a judgment of the Superior Court of Santa Clara County. M. H. Hyland, Judge.

The facts are stated in the opinion.

Tirey L. Ford, Attorney-General, and George A. Sturtevant, Deputy Attorney-General, for Appellants.

L. Kearney, and H. A. Hardinge, for Respondent.

CHIPMAN, C.—A writ of mandate was asked by plaintiff to compel defendants to admit him to the state normal school at San José, and to permit him to enjoy the privileges thereof as a student. The writ was granted and defendants appeal from the judgment. The action is brought against defendant Dailey, as president, and all the teachers constituting the faculty of said normal school. Among other defenses, defendants set forth in their answer, as authority for their action, a resolution passed on September 21, 1899, by the local board of trustees of said school, which is as follows: "Resolved, that the faculty of this state normal school is hereby directed to drop any student who, by reason of poor scholarship, bad character, or evident unfitness for teaching, is disqualified to become a teacher."

The court found that plaintiff entered the school in 1895, and was duly readmitted February 25, 1899, as alleged, with all the rights and privileges common to students therein; that he conformed to all the rules and regulations adopted for the government of the school, and continued to be such student until September 4, 1900, "when the said president and faculty of said state normal school refused to permit the said Henry E. Miller to further continue in said school as a pupil." The court found that the resolution set forth in the answer was duly adopted by the local board of trustees; that while plaintiff was being instructed in the several branches taught in said school, the defendants "did on the fourth day of September, 1900, strike from the rolls of said state normal school the name of said Miller and then and there dismissed and expelled said Miller from the state normal school; and then and there refused, and still refuse, to instruct, teach, or in any manner recognize the said Miller as a pupil therein"; that plaintiff made the demand for admission alleged in the petition; that

he made the declaration alleged as to his purpose in entering the school, and that there was and is room therein for him as a pupil; that it is not true that he voluntarily severed his connection with the school, or that he made three several or any failures in the subject of practice teaching, or that he will never attain such degree of proficiency in said subject as will warrant the faculty in recommending him for a diploma, as averred in the answer; that plaintiff was not permitted to complete the course of practice teaching as prescribed by the rules of the school; that said board of trustees had no authority to pass the resolution set forth in the answer, and "the said resolution is unreasonable, oppressive, and deprives the said Miller of his legal rights to attend said school, in an arbitrary manner."

1. It is contended that the court was without jurisdiction because, as is claimed, the authority to hear and determine such matters as are in controversy is devolved by statute on the joint board of normal school trustees, by section 1492 of the Political Code, which reads: "It shall be the duty of the joint board. . . . 4. To sit as a board of arbitration in matters concerning the management of each state normal school that may need adjustment." Just what "matters concerning the management" of these schools "that may need adjustment" are subjects of arbitration by the joint board may not be easy to define. This much, however, we think may be safely said: that the legislature did not intend to give to the joint board jurisdiction to arbitrate the question of an individual student's right to be admitted to the school. This joint board meets but once a year, except "any urgent business affecting the welfare of any or all of the normal schools" will authorize the governor to call a special meeting. If it was intended that this board should supervise every matter affecting individual students, it would have to be in session most of term time in order to adjust matters arising in the several schools (now five) in the state, and this certainly was not contemplated in our normal-school management. Section 1489 seems to leave the control and government of each school with its local board, and it is only such matters of general concern needing adjustment which it was intended the joint board might arbitrate. But whatever may be the meaning of this provision, the jurisdiction of the court is not taken away or affected by it.

Whether petitioner exhausted the remedies afforded him by the statute is another question, it will be noticed at this point, as the claim is, that plaintiff under the above provision of the statute should have shown that he appealed to the joint board, and not having done so he cannot have the remedy of *mandamus.* We do not think the statute gives to the joint board an appellate jurisdiction to hear and determine such a grievance of a student as is set forth in the complaint. Plaintiff was not called upon to appeal to the joint board from the action of the teachers and president before he could resort to the courts.

2. It is urged that the action was commenced against the wrong parties; that the action should have been against the local board of trustees of the school. There was no question raised to the proceedings, by demurrer or otherwise, for misjoinder or non-joinder of parties. Defendants answered the petition and the parties went to trial; plaintiff put in his evidence and rested his case without objection being made by defendants that they were not proper parties to the action. Besides, defendants claimed and exercised the power to admit plaintiff to the school, and also to drop or to expel him. It would seem, therefore, that they are properly made defendants to the action. (See *Tape* v. *Hurley,* 66 Cal. 473; *Wysinger* v. *Crookshank,* 82 Cal. 588.)

3. It is contended that the petition does not state facts sufficient to constitute a cause of action against defendants.

The complaint shows that plaintiff possessed all the requisite qualifications for admission prescribed by the Political Code (secs. 1494, 1503), and that he was duly and regularly admitted as a student September 2, 1895, and readmitted February 25, 1899, with all the rights and privileges common to students of the school; that he pursued the studies prescribed and conformed to all the rules and regulations of the school, and so continued until September 4, 1900, when the president and faculty refused to permit him to further attend the school, and while he was thus pursuing his studies they unlawfully and without cause struck him from the roll of students, expelled him, and refused to recognize him as a student or to further instruct him. When plaintiff showed that he possessed all legal qualifications to enter the school, that he was admitted, and that he conformed to all the regulations of the school, and was engaged in pursuing the prescribed studies, he showed

a violation of duty on defendants' part in expelling him with-out cause. If the local or joint board, or both boards, had made any regulations governing the school, plaintiff has alleged full compliance with them. He was not called upon to set forth these regulations in his petition, and it cannot be held insufficient on an assumption that these boards, or either of them, made some regulation as to time of graduation and on the further presumption that petitioner was permitted to at-tend the allotted time and could thereupon be expelled. The statute places no limit as to the number of times a person over sixteen years of age may be admitted, and there is no limit to the number of efforts a qualified person may make to fit himself for teaching by taking this normal course; and there is no maximum age limit. It may be that the power is given to one or other of these boards to make reasonable regulations on these subjects, or some of them, but we cannot assume that such regulations exist in this general attack on the sufficiency of the petition; and if we did so the petitioner avers he has conformed to and is within all regulations of the school. Appellant claims that the rule stated in *Rhoda* v. *County of Alameda*, 52 Cal. 352, should govern,—namely, "When a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he must show the facts." In the case at bar the conditions precedent to the right to be admitted to a normal school are found in the statute, and all the facts relat-ing to the right as defined by the statute were alleged, and this we think was sufficient. If after admission defendants had cause for expelling plaintiff they should show it as matter of defense. He alleged that he had been unable to ascertain the cause from the president or teachers, and that his expulsion was without cause. He also showed that he had demanded to be permitted to continue his studies. The several objections urged against the sufficiency of the petition, above noticed, are not well taken.

4. It is urged that the resolution set out in the findings and in the answer is a reasonable and valid regulation, and that the board had the power to make it, and that plaintiff was right-fully dropped from the rolls under the resolution. Section 1489 of the Political Code gives the local board power "to pre-scribe rules for their government and the government of the school." The statute gives to the joint board the power to

prescribe a uniform series of text-books "for use in the grades and classes for which they are adopted"; to prescribe a uniform course of study and time and standard for graduation; to prescribe also a uniform standard of admission for students, and also to pass "general regulations that may be applied to all the state normal schools, thus affecting their well-being" (sec. 1492). No claim is made by appellants that plaintiff was denied the privilege of attendance because he had violated or come short of any regulation of the joint board. The local board can make no written or oral rules under the powers given to the joint board; they can only make such regulations as may reasonably be said to be "rules for their government and the government of the school," not inconsistent with the specific powers given the joint board; the studies to be pursued, the standard of admission, the time and standard for graduation are all matters the regulation of which is devolved on the joint board. The local board cannot set up an arbitrary standard of its own, either as to the standard of admission, the studies to be pursued, or the time or standard for graduation, for these powers are conferred on the joint board. The purpose of the law is to secure uniformity in all the schools, so far as possible in these matters, and to prevent different standards of proficiency in the different schools. The entire evidence in the case is not before us, but from what we have it appears that plaintiff had "passed" and had "a record in everything except practice teaching." As to this branch of studies the evidence is, that "the regular course in practice teaching is twenty weeks—five months"; that "a good many students who fail in the subject take it more than once, and sometimes more than twice." One of the teachers testified that "five weeks is the usual time for us to judge whether a teacher is failing or not. We pass judgment at the end of five weeks, and final judgment at the end of ten weeks (one half the time allowed to this branch of studies). If the work is n't successfully done, for the children's sake we take the class away from the teacher, and sometimes we give the student another class." The court found that plaintiff had made no failures in the subject of practice teaching, and that it is not true that he will never attain such degree of proficiency in the subject as will warrant the faculty in refusing to recommend him as worthy to receive a diploma; and it was further

found that he was not permitted to complete the course of practice teaching prescribed by the regulations of the school. It is manifest that the teachers cut plaintiff off from the privileges of the school under the authority given them by the resolution passed by the local board, on the assumption that they could by their arbitrary will decide him to be "disqualified to become a teacher," and dismiss him from the school, even though he had passed in all branches except practice teaching, and had never failed in his examinations in the subject of practice teaching, and although he had not completed the time given to it. In this we think the teachers exceeded their power and deprived plaintiff of a right given him by the statute. What has been said is not to be understood as holding that the board could be compelled to grant plaintiff a diploma in the face of the teachers' reports showing lack of proficiency, or other facts from which it would be evident that he was unfit to become a teacher. The question of plaintiff's right now or hereafter to a diploma is in no sense involved. He asks only to be permitted to enjoy the right given him by the law to pursue his studies in the school, and this much we think may be secured to him by the writ. We do not think it within the power of the teachers to anticipate the result of the final examination, and exclude a student from the privileges of the school at any time they may elect to do so, simply because in their judgment he will never make a successful teacher.

5. It is claimed that the writ would be a vain act, and therefore should not be issued. *Boyne* v. *Ryan,* 100 Cal. 265; *State* v. *Orange Training School for Nurses,* 42 Atl. Rep. 846; *Keller* v. *Hewitt,* 109 Cal. 146, are cited. In the Ryan case the court refused the writ, compelling Ryan to "institute a suit," as district attorney, because it had no power to compel him to prosecute the case to final judgment, and it was said that "a court will not exercise power but when they exercise it to some purpose." It is claimed that because the court could not compel the faculty to grant a diploma to plaintiff, it would be a vain act to compel them to allow him to pursue his studies. It cannot be known in advance what students, on entering the school, may ultimately show the proficiency requisite for graduation. Plaintiff is not asking that he be graduated (which was the case in *State* v. *Nurses, supra*); he asks

only to be permitted to pursue his studies in the school. The case is not analogous to the Ryan case. It was held in *Keller* v. *Hewitt,* 109 Cal. 146, that the board of education could be compelled by *mandamus* to issue a grammar-grade certificate as a teacher to one who has been found by the board to be proficient in all the studies, subjects, and matters required by law and the rules of the board, and that it may be compelled to issue the certificate by a writ of mandate. The right to be admitted to a normal school is as valuable a right as that entitling a child to be admitted to the primary or grammar schools. While the law doubtless contemplates the preparation of students for teachers in the public schools, it puts no obligation on the student to teach should he graduate, and there is no obligation on any county board of education to give him a school. He may change his mind as to his intention to become a teacher and engage in other occupations. The normal schools are a part of the public school system of the state. Not all who graduate are so constituted as to be successful teachers; probably some who fail in their technical examinations are, by natural endowments and the training given, better fitted to impart instruction than others who receive diplomas; there are many excellent teachers who never take the normal-school course, but obtain certificates to teach in the grammar school from boards of education in the several counties. We do not think it a vain thing to grant plaintiff the rights he claims under the law.

6. It is contended that the judgment is not supported by the findings or the evidence.

We must assume that the evidence supports the findings. The bill of exceptions does not purport to set out all the evidence; there are no specifications of the insufficiency of the evidence to support the findings; so much of respondents' brief as is directed to the insufficiency of the evidence must therefore be disregarded.

As to the insufficiency of the findings, it is claimed that the answer alleged certain facts on which the court failed to make findings,—namely, 1. That plaintiff had attended the school for the time allowed by law, and had taken the full course of study prescribed by law; 2. That plaintiff had voluntarily separated himself from the school; 3. That, in the judgment of the faculty, plaintiff was not mentally capable of becoming

a teacher. The court found that plaintiff was not permitted to complete the course of practice teaching prescribed by the rules of the school. If there is any definite time prescribed by law during which a student may attend a normal school, it has not been pointed out and we have found none. The court also found that plaintiff did not voluntarily sever his connection with the school. On the third point the court found that plaintiff made no failures in the subject of practice teaching, which is the only branch in which it is claimed he was deficient; and the court also found that it is not true that he never will attain such degree of proficiency in the subject of practice teaching as will warrant the faculty in recommending him for a diploma. This was substantially the ground alleged for the belief of the faculty that plaintiff "was not mentally capable of making a teacher."

The findings show that plaintiff was entitled, as the court adjudged, "to continue his course of study, and to enjoy the rights, privileges, and benefits common to students of said state normal school."

It is advised that the judgment be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

Henshaw, J., McFarland, J., Temple, J.