FERNANDO SIERRA BERDECIA, COMMISSIONER OF LABOR, ETC., Petitioner and Appellee, *v.* SOUTH PORTO RICO SUGAR CO., Respondent and Appellant.

No. 10503.   Argued November 5, 1951.—Decided February 18, 1952.

*James R. Beverley, R. Castro Fernández,* and *Francisco Castro Amy,* for appellant. *Joaquín Gallart Mendía* for appellee and for the Department of Labor.

MR. JUSTICE MARRERO delivered the opinion of the Court.

In representation and on behalf of 967 employees of the sugar industry,[1] the Commissioner of Labor of Puerto Rico filed in the District Court of Ponce, on August 12, 1948, a complaint against South Porto Rico Sugar Co. (of Puerto Rico). He alleged in substance that in the operation of its business of manufacturing cane sugar and in its Guánica Central respondent employed in different occupations from

---

[1] The number of persons on whose behalf the complaint was filed was subsequently increased to 975.

April 29, 1943, until May 29, 1946, the persons whose names appear in appendix "A," attached to and made part of the complaint, upon shifting their turn of work during more than eight hours in different twenty-four-hour periods, without paying them for the hours thus worked in excess of eight at twice the applicable wage rate, in violation of the provisions of paragraph A–2 (a) (sic) of Mandatory Decree No. 3 of the Minimum Wage Board; that for the reason given the respondent owes the aforesaid workmen the sum of $34,648.82;[2] that the respondent has refused to pay to the aforesaid employees the money owed to each of them, the petitioner not knowing, besides, whether the former paid to the latter the sum of $4,407.72 as overtime in connection with the ninth hour; and that in addition to the aforesaid amount petitioner claims from the respondent on behalf of said workers an amount of money equal to the unpaid amount, as an additional penalty, pursuant to the provisions of § 25 of the Minimum Wage Act.[3]

The respondent answered denying that it owed any amount to the aforesaid workers, as well as that it had not paid said $4,407.72 as double rate for the ninth hour, and alleging on the contrary that it had made such payment. It set up as a first defense that the complaint fails to state a claim against it and as a second defense it moved for the dismissal of the complaint on the following grounds:

"(a) Because Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico, on which the claim made in the

---

[2] That amount was subsequently reduced to $30,304.13.

[3] Section 25 of Act No. 8 of 1941 (Sess. Laws, pp. 302, 324), as amended by Act No. 217 of 1945 (Sess. Laws, pp. 680, 700) and by Act No. 451 of 1947 (Sess. Laws, pp. 950, 968) provides that: "Every laborer or employee who receives for his work a compensation different from or lower than that fixed for any industry, business, or occupation, in accordance with this Act or any decree, regulation, resolution, or order of the board, shall be entitled to recover through a civil action the unpaid difference up to the total amount of the compensation to which he is entitled, *plus an amount equal to the unpaid amount, as an additional penalty*, . . ." (Italics ours.)

complaint filed herein is based, is illegal and void insofar as it permits and legalizes daily work after the ninth hour, in open violation of the provisions of Act No. 49 of 1935;

"(b) Because the aforesaid Decree No. 3 imposes a penalty in addition to that imposed by the aforesaid Act No. 49 of 1935, to wit: Double rate for hours worked in excess of the ninth hour, and the Minimum Wage Board of Puerto Rico lacks power to impose such penalty;

"(c) Because had the Minimum Wage Board of Puerto Rico been empowered to impose a penalty for employing or permitting that work be done for more than eight hours a day, such power, being an undue delegation of a legislative power, would be null and void;

"(d) Because the workers on whose behalf the claim in the complaint filed in the instant case is made, are estopped from making such claim."

Petitioner moved for the elimination of the entire second defense, whereupon the lower court overruled the motion insofar as paragraphs a, b and c of said defense were concerned, and sustained it as to paragraph d, ordering that it be stricken.

At this point, on October 11, 1949, the parties filed a stipulation, the essential paragraphs of which recite:

"4. That petitioner accepts, after due investigation, that the respondent paid to said employees the sum of $4,390.96 as double rate for the ninth hour of work, as said amount is broken down in Exhibit 'I' which is attached to and made part of this stipulation.

"5. That the respondent accepts that should it be decided that it was bound to pay to the aforesaid employees at double rate all the hours they worked in excess of the ninth, it should have paid them in said connection the sum of $30,304.13, as said amount is broken down in Exhibit 'I' which is attached to and made part of this stipulation.

"6. That, in view of the foregoing, there is no factual controversy between the parties, the case pending decision of the questions of law raised by the respondent in its amended answer, which may be discussed by brief."

The case was thus submitted to the consideration and decision of the lower court, which delivered a lengthy opinion dated April 3, 1951, the two final paragraphs of which read as follows:

"Pursuant to the reasons set forth in this opinion, we are constrained to conclude that this court lacks venue and/or jurisdiction to consider and decide in regard to the grounds alleged in the second defense for the dismissal of the complaint, wherefore we should and must overrule them.

"The facts having been accepted by the stipulation of October 11, 1949, approved by the court on the 18th of the same month and year, we are compelled to grant the complaint, as it is hereby granted, and consequently respondent South Porto Rico Sugar Co. (of Puerto Rico) is ordered to pay to the laborers represented by the Commissioner of Labor and listed in Exhibit 'I' which forms part of the stipulation submitted and approved by the court, as the persons on whose behalf the action was brought and in the proportion and amount therein set forth, the amount of $30,304.13, plus a like sum of $30,304.13 compensation as liquidated damages (paragraph A–2(a) of Mandatory Decree No. 3 of the Minimum Wage Board; *Tulier* v. *Land Authority,* 70 P.R.R. 249) to be also distributed in amounts equal to those to which they are entitled as wages earned and not received, which makes a total to be paid and satisfied by the respondent to the petitioner for the workers represented by the latter, of Sixty Thousand Six-Hundred and Eight dollars and Twenty-six cents ($60,608.26); without special imposition of costs."

From the judgment entered pursuant to those two paragraphs the respondent appealed. It now contends that the lower court erred: (1) in holding it had no jurisdiction to entertain and decide the question of law raised in the second defense of the amended answer; (2) in not declaring illegal and void paragraph B–2(a) of Mandatory Decree No. 3 of the Minimum Wage Board of Puerto Rico insofar as it permits or legalizes daily work in excess of the ninth hour; (3) in not declaring illegal, null and void that part of paragraph B–2(a) of Mandatory Decree No. 3 which imposes

the obligation of having to pay at double rate for hours worked in excess of the ninth hour, for the Minimum Wage Board lacked power to impose such penalty; and (4) on the hypothesis that the Minimum Wage Board had been empowered to impose a penalty for employing or permitting that work be done for more than eight hours a day, in not declaring the delegation of such power unconstitutional and void.

The first error assigned was not committed. Act No. 8 of April 5, 1941 (Sess. Laws, p. 302), created in the Department of Labor a Minimum Wage Board with the necessary powers to enforce said Act, with the duty to appoint a Minimum Wage Committee to investigate the labor conditions prevailing in certain occupations, businesses or industries and, after examining the report which said committee must submit to it and after holding a public hearing of the interested parties and of the public, empowered to fix: "(1) The minimum wage rate which must be paid to workers employed in the occupation, business, or industry in question, or in the operation, branch, process, or activity of the occupation, business, or industry in question. . . ." and "(2) The maximum working hours consistent with the health, safety, and general well-being of workers in said occupation, business or industry; . . ." By § 9 of said Act it was provided that: "as soon as the board shall fix the time and place for the holding of a public hearing for the purpose of considering and determining the matters stated in the preceding section, it shall proceed to give notice of said hearing by an announcement which shall be published ten (10) days in advance in at least one newspaper of general circulation in the Island"; by § 10 that: "after holding said hearing, the board shall issue a mandatory decree, which shall take effect sixty (60) days after its promulgation, . . ."; by § 20 that: "the minimum wage which the board may fix as provided by this Act shall be the minimum rate that employers

shall be bound to pay . . ." and that every person who pays to any worker a wage lower than said minimum wage, shall be guilty of a misdemeanor; and by § 24, insofar as pertinent here, the following was provided:

"(a) .       .       .       .       .       .       .       .

"(b) The findings of fact at which the board acting within its powers may arrive shall, in the absence of fraud, be conclusive; *Provided,* That any person directly or indirectly aggrieved by any decree or rule of the board may apply to the latter for reconsideration within twenty (20) days after the promulgation of such decree or rule. The petition for reconsideration shall be made under oath and the same shall contain the grounds on which it is based; *Provided,* That reconsideration shall be granted only for one of the following causes:

"That the board acted without authority or beyond its powers; or that the decree, rule, or order was obtained through fraud.

"A review of the final decision which the board may render in the matter, may be obtained in the Supreme Court of Puerto Rico within a term of fifteen days after the service thereof. *The court may affirm or set aside the decision of the board; but the setting aside shall be only for one of the following reasons:*

"*That the board acted without authority or beyond its powers; or that the decree, rule or order was obtained through fraud.*" (Italics ours.) [4]

We take judicial notice of the fact that on May 7, 1943, the respondent South Puerto Rico Sugar Co. filed in this Court a petition for review under the second paragraph of subdivision (b) of § 24, *supra,* and that on June 6, 1944, this Court entered an order setting forth that "For the reasons stated in the opinion delivered on May 31, 1944, petition for review No. 11, *Luce & Co., S. en C.,* petitioner, v. *Minimum*

---

[4] The amendments introduced to Act No. 8 of 1941 by Acts Nos. 217 of May 11, 1945 (Sess. Laws, pp. 680, 698) and 451 of May 14, 1947 (Sess. Laws, pp. 950, 968), are not in point here inasmuch as on the date Mandatory Decree No. 3 was issued and became effective (said Decree was promulgated on February 27, 1943, and became effective sixty days after its issuance) the Sections quoted prevailed as copied above.

*Wage Board*, respondent, our judgment entered on September 23, 1943, in the above-entitled cases is reconsidered insofar as it set aside Decree No. 3, which is hereby declared valid." See *Luce & Co.* v. *Minimum Wage Board*, 62 P.R.R. 431 and 63 P.R.R. 678. Must the respondent, by virtue thereof, be estopped from contesting anew the validity of Mandatory Decree No. 3? The question must be answered in the affirmative. That Section does not state clearly and specifically that the procedure it provides is exclusive. However, its context dispels any doubt to the effect that once it has been exhausted, the validity of a decree approved by the Minimum Wage Board can neither be collaterally attacked, nor in an independent proceeding. We have seen that after a full hearing before the Board and after the latter enters a final decision, review thereof may be obtained in this Court within a certain period of time, and that we may affirm or set aside said decision. However, by express statutory provision, such decision shall be set aside by this Court only when the Board acted without authority or beyond its powers, or because the decree, rule or order was obtained through fraud.

The respondent, we repeat, timely filed in this Court its petition for review authorized by law. It is true that it did not raise therein some of the questions it now raises. Nevertheless, considering the manner in which the aforesaid Section is phrased, respondent had the opportunity to raise them within the writ of review. If if did not do so it can blame no one but itself. To permit it now to attack collaterally in the action brought against it on behalf of certain workers the validity of the decree would be equivalent to giving authorization to engage in piecemeal litigation, to attack the validity of a decree in another court and in a proceeding different from that specifically provided by law and to vitiate the proceeding. Such was not the spirit which animated the Legislature in approving the aforesaid Act

No. 8 of 1941. A perusal thereof clearly discloses that the purpose behind it was none other than to protect workers in their minimum standards of living necessary for their health, efficiency and welfare through the approval of decrees which once approved by the Minimum Wage Board could be reviewed, by virtue of a speedy proceeding, by the highest Court of the Island and that once we declared them valid they could be fully efficacious and effective, without being subject to subsequent attack. Therefore, we arrive at the conclusion that Mandatory Decree No. 3 involved herein can not be challenged as the respondent seeks to do and that the lower court acted correctly in refusing jurisdiction to entertain the questions it raised intending to invalidate it. See *Myers* v. *Bethlehem Corp.*, 303 U. S. 41, 82 L. Ed. 638; *Inghram* v. *Union Stock Yards Co.*, 64 F. 2d 390; 28 Cal. L. R. 129, 155, 166; Gellhorn, Administrative Law, 1940 ed., p. 793; *Jordan Marsh Co.* v. *Labor Relations Com'n*, 312 Mass. 597; *United States* v. *Sharp*, 188 F. 2d 311; *cf. Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337, 81 L. Ed. 1143; *Black River Valley Broadcasts* v. *McNinch*, 101 F. 2d 235; *Securities and Exchange Commission* v. *Andrews*, 88 F. 2d 441; *Stockton* v. *Department of Employment*, 153 P. 2d 741; *Yakus* v. *United States*, 321 U. S. 414, 88 L. Ed. 834; *Medina* v. *Hato Rey Realty Co.*, 72 P.R.R. 595, 599; *People* v. *Eastern Sugar Associates*, 72 P.R.R. 548, 552; *Ruiz* v. *District Court*, 71 P.R.R. 358; *Colón* v. *Insular Police Comm'n*, 72 P.R.R. 834. Of course, despite its lack of jurisdiction to consider the questions raised by the respondent regarding the validity of the decree, the lower court had jurisdiction to decide on the merits the case before it and, considering the stipulation filed by the parties, to enter judgment as it did.

In view of our foregoing conclusion, we need not consider the remaining assignments.

The judgment appealed from will be affirmed.